# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID HYMOND, | ) | CASE NO. 8:07CV438 |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| ROBERT HOUSTON and DENNIS BAKEWELL, | ) | |
| Respondents. | ) | |

Following a conviction for a variety of crimes including terrorizing a woman at knife-point, David Hymond (Hymond) filed a Petition for Writ of Habeas Corpus. (Filing 1.) After a motion for summary judgment on the grounds of procedural default was denied (Filing 14), Respondents answered. (Filing 15.) The answer is supported by the state court records. (Filings 9, 16 and 17.) Despite repeated opportunities (Filing 14 at CM/ECF p. 7; Filing 18), Hymond has failed to submit a responsive brief.

Hymond's claims that his guilty pleas were involuntary and that he was provided with ineffective assistance of counsel have no merit. Therefore, the Petition for Writ of Habeas Corpus will be denied with prejudice.

## *I. BACKGROUND*

On November 2, 2005, in the middle of a jury trial, Hymond entered pleas of guilty to all four charges. (Filing 9-3, Attach.2, at CM/ECF p. 1-36.) He entered guilty pleas to burglary, making terroristic threats, use of a deadly weapon during the commission of a felony and first degree false imprisonment. (*Id.* at CM/ECF pp. 8-9.) He was represented by Leslie E. Cavanaugh, an Assistant Douglas County, Nebraska Public Defender. (*Id.* at CM/ECF p. 1.) Judge James T. Gleason was the trial judge. (*Id.*) Shelly R. Stratman was the prosecutor. (*Id.*)

Before accepting the pleas, Judge Gleason conducted a thorough and extensive examination of Hymond and the circumstances surrounding his desire to plead guilty. Among other things, (1) the judge determined that Hymond wanted "to stop the trial right where we are" and "enter a plea to all four counts" (*id.* at CM/ECF p. 5); (2) the judge learned from Hymond that he was 39 years of age and was able to read, write and understand the English language (*id.* at CM/ECF p. 6); (3) the judge explained to Hymond the various alternatives that were open to him such as continuing with trial, pleading not guilty by reason of insanity, pleading "nolo contendere" or pleading guilty (*id.* at CM/ECF p. 7); (4) Hymond told the judge that he had "plenty of time to discuss those options with [his] lawyer" (*id.*); (5) Judge Gleason was assured by Hymond that he did not suffer from any mental or emotional condition (*id.*); (6) the judge was also assured by Hymond that he had not recently ingested any drugs or alcohol (*id.* at CM/ECF p. 8); (7) the judge explained the rights Hymond was waiving by pleading guilty including the right to a speedy and public jury trial, the right to a unanimous verdict, the right to proof beyond a reasonable doubt and the right to the presumption of innocence, the right to confront accusers, the right to subpoena witnesses, the right to remain silent before the jury, the right to appeal in the event the jury found him guilty, the right to counsel and the right to appointment if Hymond could not afford counsel (*id.* at CM/ECF pp. 9-12); (8) Judge Gleason thoroughly explained the elements of each of the four crimes and Hymond said he understood (*id.* at CM/ECF pp. 12-15); (9) Hymond said he also understood that a guilty plea admitted "that these charges against you are true and correct" and that a guilty plea would end the trial (*id.* at CM/ECF p. 15); (10) Judge Gleason provided a painstaking explanation of the penalties for each of the charges including an advisement that the weapons charge carried with it

a consecutive sentence (*id.* at CM/ECF pp. 15-20); (11) Judge Gleason asked whether "[a]nybody told you you'd get a light sentence or a better sentence . . . by pleading guilty" and Hymond responded, "No, sir." (*id.* at CM/ECF pp. 21-22); (12) Judge Gleason also asked Hymond whether "anybody told you that you'd be treated more leniently or get any kind of special deal or anything at all like that by pleading guilty" and Hymond answered, "No, sir." (*id.* at 22); (13) Hymond told that the judge that he had discussed the facts and circumstances of the case with his lawyer, that he did not need more time to talk with his lawyer, that he was satisfied with his lawyer and that she had "done a good job" (*id.* at CM/ECF pp. 24-26); and (14) Hymond said he understood that if the judge accepted the guilty pleas that Hymond was waiving "any error at all up to this point in time" and Hymond would be precluded from relying on such errors "for anything in the future." (*Id*. at CM/ECF p. 27).

In addition, Judge Gleason determined that there was no plea agreement except for the prosecutor's promise not to file any more charges such as a witness tampering charge. In that regard, the following exchange took place between the judge, the lawyers and Hymond:

> THE COURT: Is there an agreement?
>
> MS. CAVANAUGH: There is an agreement simply that there will not be any more charges.
>
> MS. STRATMAN: The agreement, Judge, is that, if you accept Mr. Hymond's pleas of guilty to these four counts, that the State will not file a tampering with a witness charge.
>
> THE COURT: Okay. Is that your understanding of the agreement also?
>
> MS. CAVANAUGH: That is. Yes.

3

> THE COURT: All right. Now, you understand –
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: – that even – this agreement doesn't call on the Court to be involved in any regard – with regard to sentences or anything else? But do you understand –
>
> THE DEFENDANT: I understand.
>
> THE COURT: – this agreement is between your lawyer and the State?
>
> THE DEFENDANT: I understand.
>
> THE COURT: All right.
>
> MS. CAVANAUGH: And I should say that that's the full agreement also. That Mr. Hymond and I discussed the potential of silence for the State, but that he understands that the State's – part of our plea agreement is not that the State will remain silent. And I think Mr. Hymond understands that; is that correct?
>
> THE DEFENDANT: Yes.

(*Id.* at CM/ECF pp. 22-23.)

Judge Gleason also carefully examined Hymond regarding the factual basis for his guilty pleas. Drawing from the evidence he had heard during the trial, the judge asked specific questions regarding each element of each charge. Hymond made the following admissions in response:

> THE COURT: I'm going to ask you again, sir, with regard to the charge of burglary, the evidence that I've heard so far suggests that on the night of October 23rd, 2004, or into the early morning of October 24th, 2004, you entered into the premises of Holly Hankins. Did you do that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you break in?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Through the back window?

4

THE DEFENDANT: Yes, sir.

THE COURT: And when you broke into the premises of Miss Hankins, was that before she got home or after?

THE DEFENDANT: Yes, sir.

THE COURT: Before?

THE DEFENDANT: After.

THE COURT: After. All right. And did you then enter her bedroom?

THE DEFENDANT: Yes, sir.

THE COURT: Found her in the bedroom?

THE DEFENDANT: Yes, sir.

THE COURT: And did you – what time was that? Was this about – I've heard testimony that it was about six in the morning that you entered into the bedroom.

THE DEFENDANT: Six.

THE COURT: Is that about right?

THE DEFENDANT: Yes, sir.

THE COURT: Early morning hours?

THE DEFENDANT: Yes, sir.

THE COURT: And did you stay with Miss Hankins in that bedroom from that early morning hours till along about 11:30 in the morning?

THE DEFENDANT: Yes, sir.

THE COURT: And during the time that you had her there in the bedroom, did you restrain her and keep her there and refuse to allow her to leave?

THE DEFENDANT: Yes, sir.

THE COURT: Did you threaten her with a knife?

THE DEFENDANT: Yes, sir.

THE COURT: Did you kneel on top of her and hold a knife up over her?

THE DEFENDANT: Yes, sir.

THE COURT: That's the knife we received in evidence, was it?

THE DEFENDANT: Yes.

THE COURT: You've – you've been here through the first two days of trial. You heard Miss Hankins' testimony, did you not?

THE DEFENDANT: I heard it.

THE COURT: And she's related to this Court and to the jury the factual setting of what occurred. I kind of just made a synopsis of that in asking you these questions, haven't I?

THE DEFENDANT: Yes, sir.

THE COURT: But did you do everything she said you did –

THE DEFENDANT: Yes, sir.

THE COURT: – to Miss Hankins?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you heard everything she told me?

THE DEFENDANT: Yes, sir.

THE COURT: And told the jury that's what happened?

THE DEFENDANT: Yes.

THE COURT: Anything further from the State by way of factual basis?

MS. STRATMAN: Just that that location 2750 Mary Street is in Omaha, Douglas County, Nebraska.

THE COURT: Anything by way of factual basis from the defense?

MS. CAVANAUGH: No, your Honor.

(*Id.* at CM/ECF pp. 29-32.)

On January 17, 2006, the judge sentenced Hymond to 4 to 8 years in prison on the burglary charge, and 1 to 2 years in prison on the threat and false imprisonment charges, to run concurrently. (*Id.* at CM/ECF p. 47.) He sentenced Hymond to 2 to 4 years in prison on the weapons charge and, as required by law, that sentence was to run consecutively. (*Id.*) The "bottom line is that's a sentence of six to twelve years" and Hymond was eligible for parol in three years. (*Id.*) The judge also gave Hymond 450 days credit for time already served. (*Id.*) These sentences were well below the maximum sentences that Judge Gleason could have imposed. (*Id.* at CM/ECF p. 19 (the "total range is a minimum of two years; a maximum of fifty . . . .").)

Hymond appealed and he was represented on appeal by his trial counsel. (Filing 9-5, Attach. 4.) The appeal raised one issue. Counsel argued that the sentences were excessive. (*Id.*) The State of Nebraska filed a motion for summary affirmance and the Nebraska Court of Appeals granted the motion on May 4, 2006. (Filing 9-6, Attach. 5.) A pro se petition for further review was filed with the Nebraska Supreme Court, but that petition was overruled on June 28, 2006. (Filing 9-7, Attach. 6.)

Hymond filed a lengthy pro se post-conviction motion. (Filing 9-8, Attach 7.) It was summarily denied on July 27, 2006. (Filing 9-9, Attach. 8.) Hymond filed a pro se appeal, and the Nebraska Court of Appeals affirmed without opinion on January 31, 2007. (Filing 9-11, Attach. 10.) The Nebraska Supreme Court, without opinion, denied further review on February 28, 2007. (Filing 9-12, Attach. 11.) This case followed on November 15, 2007. (Filing 1.)

## II. ANALYSIS

Hymond has three claims. Condensed and summarized, those claims are:

> Claim One: Petitioner's conviction was obtained by plea of guilty which was unlawfully induced or not made voluntarily with an understanding of the nature of the charge and the consequences of the plea *because* Petitioner was misinformed about the terms of the "plea bargain," the length of the possible sentence, and the elements of the crimes to which he was pleading guilty.
>
> Claim Two: Petitioner's conviction was obtained as a result of ineffective assistance of counsel *because* Petitioner's trial counsel did not fully investigate the facts underlying the charges, allowed "false testimony," and did not object on "speedy trial" grounds.
>
> Claim Three: Petitioner's conviction was obtained as a result of ineffective assistance of counsel *because* Petitioner's appellate counsel did not investigate, review the trial record, or argue on appeal that Petitioner was not given the plea agreement that he was promised and appellate counsel failed to keep Petitioner informed of the status of the appeal.

(Filing 7) (footnote omitted.)

The undersigned previously determined that Hyman gave the Nebraska courts a fair opportunity to consider the claims presented here and thus the doctrine of procedural default did not apply. (Filing 14.) While Respondents continue to disagree with that earlier decision (Filing 15 at CM/ECF pp. 7-12), the undersigned will not revisit that question. Instead, the undersigned will resolve this case in favor of Respondents by addressing the more straightforward questions posed by the merits. *See*, *e.g.*, *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.") (en banc).

Because of the summary nature of the dispositions of the state post-conviction proceedings, there is doubt about whether those decisions are entitled to deference under 28 U.S.C. § 2254(d). *See*, *e.g.*, *Middleton v. Roper*, 455 F.3d 838, 855-856 (8th Cir. 2006) (deferential standard of review did not apply to state prisoner's habeas claim where issue had been adequately presented to state court for review, but "state court did not address the merits of [the petitioner's] constitutional claims"). Even without giving those decisions deference, the state court records clearly establish that Hymond's claims are wholly lacking in merit.

*Claim 1–Involuntary Pleas*

The transcript of the plea-taking proceeding conclusively establishes that Hymond's pleas were knowing, intelligent and voluntary and that there was a factual basis for them. *See*, *e.g.*, *Bailey v. Weber*, 295 F.3d 852, 855 (8th Cir. 2002) (despite the fact that the habeas petitioner was sentenced to life in prison without parole, guilty plea, tendered and accepted during continuance of trial, was voluntarily and knowingly entered; the plea colloquy established that the petitioner understood the nature of the charges against him and the consequences of entering a guilty plea). In this case, Hymond explicitly stated that he was promised *nothing* except that the prosecutor would not file additional charges. Furthermore, Judge Gleason made it plain that the length of the sentence was entirely up to him to decide and no one else. In addition, Judge Gleason carefully articulated the essential elements of each charge and then established, through Petitioner's own admissions, that Hymond had committed each element of those crimes.

In short, Hymond claims that he was improperly induced or permitted to enter guilty pleas is conclusively rebutted by Hymond's own words. *See*, *e.g.*, *Trussell v. Bowersox*,

9

447 F.3d 588, 591 (8th Cir. 2006) (reviewing state court record and concluding that statements made by habeas petitioner at time of guilty plea established that he had not been promised an opportunity for probation).

*Claims 2 and 3–Ineffective Assistance of Trial and Appellate Counsel*

To be eligible for habeas relief based on ineffective assistance of counsel, a petitioner must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to satisfy either part of the test dooms the petition.

He or she must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Because of the "'distorting effects of hindsight,'" there is highly deferential scrutiny of counsel's performance and the courts indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Link v. Luebbers, 469 F.3d 1197, 1202 (8th Cir. 2006), *cert. denied*, 128 S. Ct. 488 (2007) (quoting Strickland, 466 U.S. at 689).

If the claimant establishes the first element, the petitioner must then show that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the petitioner. Id. at 694-695. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins, 539 U.S. at 534. Merely showing a conceivable effect is not enough. Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir.2006), *cert. denied,* 127 S. Ct. 2256 (2007).

Hymond's claims of ineffective assistance of trial counsel are not supported by the record. Hymond told Judge Gleason that his lawyer had done a good job and there is nothing in the record that would suggest otherwise. In particular, there is no basis for claiming that counsel had allowed "false testimony" since Hymond himself admitted that his accuser's testimony was true. Hymond's claims of ineffective assistance of appellate counsel are likewise lacking in merit. For example, there is no reason to believe that counsel's argument on appeal–excessiveness of the sentences–was incompetently put forward and, given the pleas of guilty, there is no reason to believe that appellate counsel should have advanced some other argument.

Moreover, even assuming that Hymond could establish that his counsel was somehow ineffective, Hymond has not provided any reason to believe he was prejudiced. Indeed, his knowing, intelligent and voluntary guilty pleas prove that Hymond was clearly guilty of the crimes charged. Still further, Hymond received prison sentences that were substantially below the maximum sentences that Judge Gleason could have imposed. Among other things, this suggests that Hymond was rewarded for his acceptance of responsibility. As a result, there is no reasonable probability that the outcome would have been different if Hymond's counsel had done something differently.

IT IS ORDERED that the Petition for Writ of Habeas Corpus (Filing 1) is denied with prejudice. A separate judgment will be issued.

Dated this 16th day of December, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge